IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/18/2012

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 09-35324 |
| Sonya M. Porretto, | § | |
|     Debtor. | § | Chapter 7 |
| | § | |

| | | |
|---|---|---|
| Sonya M. Porretto, | § | |
|     Plaintiff, | § | |
| | § | |
| Randy W. Williams, Trustee, | § | |
|     Plaintiff-Substitute | § | Adversary No. 11-03226 |
| v. | § | |
| | § | |
| Darryl A. Nelson, | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION REGARDING THE TRUSTEE'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**
[Adv. Doc. Nos. 38, 43, & 45]

### I. INTRODUCTION

This dispute underscores how far-reaching § 542(b) of the Bankruptcy Code[1] really is, and that is the reason the Court chooses to write this Memorandum Opinion.

Debtor Sonya M. Porretto (the Debtor) and Defendant Darryl A. Nelson (Nelson) entered into an Agreed Final Decree of Divorce whereby Nelson was obligated to pay certain creditors and to indemnify the Debtor and hold her harmless for any damages arising from his failure to pay. Nelson did, in fact, fail to pay and, when the Debtor filed for bankruptcy, those creditors were allowed claims against her bankruptcy estate. The Chapter 7 Trustee brings the instant action on the estate's behalf under § 542(b), and seeks an order requiring Nelson to turnover funds sufficient to satisfy these claims.

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted.

The Court now makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

1. On February 10, 2008, an Agreed Final Decree of Divorce (the Agreed Divorce Decree) was entered between the Debtor and Nelson in their divorce proceeding styled "In the Matter of the Marriage of Sonya P. Nelson and Darryl Arthur Nelson and in the Interest of [their minor children], No. 2007-22219, 245th Judicial District, Harris County, Texas." [Adv. Doc. No. 38, Ex. No. 3].

2. Pursuant to the Agreed Divorce Decree, Nelson was ordered to pay certain debts as part of the division of the marital estate. [*Id.*]. The exact language of the relevant portion of the Agreed Divorce Decree reads as follows:

   > IT IS ORDERED AND DECREED that the husband, DARRYL ARTHUR NELSON, *shall pay*, as part of the division of the estate of the parties, ***and shall indemnify*** and hold the wife harmless from any failure to so discharge, these items:
   >
   > H-2.   The following debts, charges, liabilities, and obligations:
   >
   > n.   Debt owed to John Anderson IRA, plus interest[2]
   > o.   Debt owed to Don Christiansen, DO, PA, DBPP, plus interest[3]

---

[2] The debt owed to John Anderson IRA, plus interest, will hereinafter be referred to as "the Anderson Debt," and the John Anderson IRA will hereinafter be referred to as "Anderson."

[3] The debt owed to Don Christiansen, DO, PA, DBPP, plus interest, will hereinafter be referred to as "the Christiansen Debt," and Don Christiansen, DO, PA, DBPP will hereinafter be referred to as "Christiansen."

    p.    Debt owed to Michael W. Ford, DDS, PA, DDP, plus interest[4]

[*Id.* at pg. 29] (emphasis added).[5]

3. Nelson signed the Agreed Divorce Decree and specifically indicated his approval as to both form and substance. *See* [*Id.* at pg. 42]. Nelson was represented by counsel in connection with the Agreed Divorce Decree. *See* [*Id.* at pg. 41].

4. On July 27, 2009, the Debtor filed a Chapter 11 petition. [Main Case Doc. No. 1]. Her Chapter 11 case was converted to Chapter 7 on December 19, 2011. [Main Case Doc. No. 243]. Randy Williams (the Trustee) was appointed the Chapter 7 Trustee.

5. Nelson did not pay the Anderson Debt when it became due. Anderson brought suit against both Nelson and the Debtor in state court (the Anderson Lawsuit). On October 22, 2009, the Anderson Lawsuit was removed to this Court, instituting Adversary Proceeding No. 09-03417. [Adv. No. 09-03417, Doc. No. 1].

6. On August 5, 2010, a default judgment was entered in favor of Anderson against Nelson. [Adv. No. 09-03417, Doc. No. 27].

7. The Debtor—who was still in Chapter 11 at this time—retained counsel and defended the Anderson Lawsuit. On August 5, 2010, this Court approved a compromise and settlement between the Debtor and Anderson. [Main Case Doc. No. 172]; [Adv. Doc. No. 30]. Pursuant to the settlement, Anderson was allowed a secured claim in the Debtor's bankruptcy in the amount of $304,780.21, "secured by a lien on the proceeds and/or property received by Debtor from the sale or other disposition of the Galveston Property . . . ." [Main Case Doc. No. 172]; [Adv. No. 30]. Anderson

---

[4] The debt owed to Michael W. Ford, DDS, PA, DDP, plus interest, will hereinafter be referred to as "the Ford Debt," and Michael W. Ford, DDS, PA, DDP will hereinafter be referred to as "Ford."

[5] Collectively, the Anderson Debt, the Christiansen Debt, and the Ford Debt will hereinafter be referred to as "the Debts."

was also granted an allowed unsecured claim in the amount of $152,390.10. [Main Case Doc. No. 172]; [Adv. Doc. No. 30].

8. Nelson also did not pay the Christiansen Debt or the Ford Debt. Christiansen and Ford sued both Nelson and the Debtor in state court (the Christiansen and Ford Lawsuit). On October 22, 2009, the Christiansen and Ford Lawsuit was removed to this Court, initiating Adversary Proceeding No. 09-03418. [Adv. No. 09-03418, Doc. No. 1].

9. On December 2, 2010, a default judgment was entered in favor of Christiansen and Ford against Nelson. [Adv. No. 09-03418, Doc. No. 30].

10. The Debtor—who was still in her Chapter 11 at this time—retained counsel and defended the Christiansen and Ford Lawsuit. On December 29, 2010, this Court approved a compromise and settlement between the Debtor and Christiansen and Ford. [Main Case Doc. No. 200]; [Adv. Doc. No. 38]. Pursuant to the settlement, Christiansen was granted an allowed secured claim in the Debtor's bankruptcy in the amount of $250,000.00, "secured by a lien on the proceeds and/or property received by Debtor from the sale or other disposition of the Galveston Property . . . ." [Main Case Doc. No. 200]; [Adv. Doc. No. 38]. Christiansen was also granted an allowed unsecured claim in the amount of $124,109.50. [Main Case Doc. No. 200]; [Adv. Doc. No. 38]. Ford was granted an allowed secured claim in the Debtor's bankruptcy in the amount of $150,000.00, "secured by a lien on the proceeds and/or property received by Debtor from the sale or other disposition of the Galveston Property . . . ." [Main Case Doc. No. 200]; [Adv. Doc. No. 38]. Ford was also granted an allowed

4

unsecured claim in the amount of $74,466.00. [Main Case Doc. No. 200]; [Adv. Doc. No. 38].

11. The bankruptcy estate has not made any distributions to pay down any of the allowed claims of Anderson, Christiansen, and Ford. The Debtor—while she was still in Chapter 11—instituted the instant adversary proceeding against Nelson on May 19, 2011. [Adv. Doc. No. 1]. In this adversary proceeding, the Debtor was seeking a judgment ordering Nelson to turnover funds to pay in full the allowed claims of Anderson, Christiansen, and Ford, as well as the funds necessary to pay the reasonable attorneys' fees incurred in defending the suits brought by Anderson, Christiansen, and Ford and prosecuting this adversary proceeding. [*Id.*].

12. On June 13, 2011, Nelson filed his original answer in this adversary proceeding.[6] [Adv. Doc. No. 5].

13. On March 8, 2012, the Trustee was substituted in as plaintiff in this adversary proceeding, as the Debtor's Chapter 11 case had been converted to a Chapter 7. [Adv. Doc. No. 23].

14. On March 29, 2012, Nelson—now represented by counsel—filed an amended answer to the complaint. [Adv. Doc. No. 30]. Nelson asserted that his obligation to the Debtor under the Agreed Divorce Decree is one of indemnification and that "[t]he estate has not made any distributions for which the Trustee may seek indemnification." [*Id.* at ¶ 11].

---

[6] Nelson's Answer was actually styled "Response to Motion from Debtor in Possession." [Adv. Doc. No. 5]. The Answer was filed by Nelson *pro se* before he hired counsel.

15. The Trustee filed a motion for partial summary judgment (the Motion) on August 24, 2012. [Adv. Doc. No. 38]. Nelson filed a response opposing the Motion on September 19, 2012. [Adv. Doc. No. 43].

16. The Trustee filed a Memorandum in Support of the Motion on October 4, 2012. [Adv. Doc. No. 45]. On the same day, this Court heard oral arguments on the Motion from counsel for the Trustee and counsel for Nelson. The Court continued the hearing until October 11, 2012 for two reasons. First, the Court wanted to give counsel for Nelson the opportunity to review the Trustee's memorandum so that he could make any rebuttal arguments. Second, the Court wanted to give counsel for Nelson the opportunity to file an affidavit from Nelson giving testimony as to whether he has made any payments to reduce the Debts.

17. On October 10, 2012, Nelson's counsel filed an affidavit from Nelson setting forth that Nelson had made a few payments to reduce the Debts. [Adv. Doc. No. 48]. There is no dispute, however, that a substantial portion of the Debts has not been paid.

18. On October 11, 2012, the Court heard additional arguments from counsel, and then issued an oral ruling granting the Motion with one exception: the exact amount that Nelson must turnover to the Trustee remains a genuine issue of material fact to be tried.[7] This Memorandum Opinion memorializes the Court's reasons for its ruling.

---

[7] Not only do the parties still disagree on the balance of the Debts, but also on the reasonableness of the attorneys' fees to be recovered. This Memorandum Opinion does not address these issues; a trial will be necessary to resolve them. Rather, this Opinion addresses the issue of whether (once the exact amount of the Debts and fees are determined) this Court should issue a simple money judgment against Nelson, which the Trustee would then have to attempt to collect; or whether it should issue a turnover order requiring Nelson to immediately deliver funds to the Trustee sufficient to satisfy the Debts and the attorneys' fees. For the reasons set forth herein, this Court will issue a turnover order.

### III. CONCLUSIONS OF LAW

#### A. Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it is a matter affecting the administration of the Chapter 7 estate. It is also a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) because the Trustee is requesting an order requiring Nelson to turnover property of the estate—i.e., to turnover funds pursuant to the Agreed Divorce Decree sufficient to pay the Debts. Further, this dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because the dispute affects the debtor-creditor relationship. Finally, this dispute is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1409(a).

#### B. Constitutional Authority to Enter a Final Order

The Supreme Court's decision in *Stern v. Marshall* recognized certain limitations on bankruptcy courts' authority to enter final orders. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Therefore, this Court has a duty to question its constitutional authority to enter a final order for any matter brought before it. The Court concludes that the facts in the

pending suit are distinguishable from those in *Stern*, and that this Court has the authority to enter a final judgment in this dispute. In *Stern*, the debtor filed a counterclaim based solely on state law, and the resolution of this counterclaim did not resolve the validity, or invalidity, of the claim held by the defendant. *Id.* Here, the Trustee seeks turnover under § 542. As this cause of action, and the requested relief, is based on an express provision of the Code, rather than state law, this suit is easily distinguishable from the suit in *Stern*. This Court is, thereby, constitutionally authorized to enter a final judgment in this suit.

### C. Nelson is Required By § 542 of the Code to Turnover to the Trustee Funds in a Sufficient Amount to Satisfy the Debts

Section 542(b) of the Code requires that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b). Thus, the test for whether turnover is appropriate is two-fold. First, the debt must be property of the estate. *Id.* Second, it must be matured and payable on demand or on order. *Id.*

> 1. <u>Nelson's obligations pursuant to the Agreed Divorce Decree are debts that are property of the estate.</u>

The scope of the bankruptcy estate is broad, encompassing "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This definition includes all kinds of property, both tangible and intangible, causes of action, claims by the debtor against others, rights of action arising under contract, insurance proceeds covering the debtor's losses, and all other forms of property. H.R. REP. NO. 595, 95th Cong., 1st Sess. 367–8 (1977); 5-541 COLLIER ON BANKRUPTCY P 541.07 (16th ed.). Here, on the date of the filing of her Chapter 11 petition, the Debtor had a legal interest in indemnification pursuant to the Agreed Divorce Decree; therefore,

this interest became property of the Debtor's Chapter 11 estate upon the filing of her Chapter 11 petition. And, once the Debtor's Chapter 11 case was converted to a Chapter 7, the indemnification interest became property of the Chapter 7 estate. *See* 11 U.S.C. §§ 348, 541 (indicating that conversion does not change the date of commencement of the case and that property of the estate is measured as of the date of commencement). Under these circumstances, the first element is met. Indeed, Nelson does not vigorously dispute that the Agreed Divorce Decree requires him to pay the Debts or indemnify the estate. Rather, Nelson strongly disputes that the second element—which requires that the obligations be mature and payable on demand or order—is met.

> 2. Nelson's obligations pursuant to the Agreed Divorce Decree are matured and payable on demand or order.

Nelson contends that his duty to indemnify the estate has not yet been triggered. Specifically, he argues that the "estate has not made any distributions for which the Trustee may seek indemnification." [Finding of Fact No. 14]. Nelson's position blurs his duties of indemnification and reimbursement under the Agreed Divorce Decree when, in fact, these obligations are separate.

Pursuant to the plain language of the Agreed Divorce Decree, Nelson's duty to indemnify is separate and distinct from his duty to reimburse. Namely, the language of the indemnification provision reads as follows:

> [I]f any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt . . . liable for such debt . . . of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt . . . against any such claim or demand, whether or not well founded, and will *indemnify* the party not assuming the debt . . . and hold him or her harmless from all damages from the claim or demand.

9

[Adv. Doc. No. 38, Ex. No. 3, at pg. 39] (emphasis added). Then, in a separate provision, the duty to reimburse is discussed:

> [T]he indemnifying party will *reimburse* the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy a judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

[*Id.* at pg. 39–40] (emphasis added). Nelson's reading, which equates the two duties, would render one of these provisions superfluous. *See, e.g., Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (stating that a contract should be construed so that none of the provisions are rendered meaningless)). Use of the phrase "indemnifying party" and then separately referring to a duty of reimbursement indicates that there is a distinction between these two concepts.

Further, not only are the two duties separate and distinct, but the duty to indemnify is not conditioned, as is the duty to reimburse, on actual payments being made. Whereas the duty to reimburse is only applicable "for any payment made by the indemnified party[,]" the duty to indemnify is not similarly limited. [Adv. Doc. No. 38, Ex. No. 3, at pg. 39]. This reading of the Agreed Divorce Decree is supported by Texas law. Texas courts recognize two kinds of indemnification agreements—those that indemnify against damages and those that indemnify against liabilities. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). Where, as here, the language of the agreement to indemnify is broad—containing phrases such as "will indemnify[,]" "and hold him or her harmless[,]" "from all damages from the claim or demand"—this evidences an agreement to indemnify against liability. *Id.* (citing *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex. App.—El Paso 1993, writ denied)); *see also Gulf Oil*

*Corp. v. Ford, Bacon & Davis, Texas, Inc.*, 782 S.W.2d 28, 30 (Tex. App—Beaumont 1989, no writ) (where indemnification agreement contained phrases such as "agrees to be responsible for and to indemnify[,]" "and save harmless[,]" "from all loss or damage and all claims and suits[,]" the court held that the agreement was to indemnify against liability).

Because the Agreed Divorce Decree contains an agreement to indemnify against liability, the indemnitee (i.e., initially the Debtor, and now the estate) is entitled to recover from the indemnitor (i.e., Nelson) "when the liability becomes *fixed* and *certain*, as by rendition of a judgment, *whether or not* the indemnitee has yet suffered actual damages, as by payment of a judgment." *Ingersoll-Rand Co.*, 997 S.W.2d at 207 (citing *Tubb*, 862 S.W.2d at 750) (emphasis added). In *Gulf Oil*, which also dealt with an agreement to indemnify against liability, the court found that Gulf was entitled to indemnification in the amount of the judgment rendered against it, even though there was no evidence that Gulf had actually paid any amount towards the judgment. *Gulf Oil*, 782 S.W.2d at 30–31. Therefore, insofar as Nelson contends that his duty to indemnify the estate is not triggered until the Trustee (on behalf of the estate) actually makes payments, this Court disagrees. Rather, because the Debtor, during her Chapter 11 case, entered into settlement agreements with Anderson, Christiansen, and Ford, and these creditors now have allowed claims in the pending Chapter 7 case [Finding of Fact Nos. 7 & 10], Nelson's obligation to indemnify the estate for the Debts is mature and payable on order.[8]

---

[8] The settlements which this Court approved giving Anderson, Christiansen, and Ford allowed claims resulted from negotiations that the Debtor, during the time that she was a debtor in possession in her Chapter 11 case, conducted with these three individuals and their counsel. It is black letter law that an agreement reached between a Chapter 11 debtor in possession and her creditors, which is approved by the bankruptcy court, is enforceable even if the Chapter 11 case is subsequently converted to a Chapter 7 case. Stated differently, a Chapter 7 Trustee is bound by the terms of any agreement negotiated prior to the conversion from Chapter 11 to Chapter 7. *See Nicholas v. United States*, 384 U.S. 678, 693 n.27 (1966)

The Trustee (on behalf of the estate) is not required to first pay these claims before seeking indemnification from Nelson.

In sum, because the two-fold requirements of § 542(b) are met, Nelson must turnover funds to the Trustee sufficient to satisfy the Debts.

### D. Nelson is Not Entitled to An Equitable Defense

Despite the fact that the requirements for turnover under § 542(b) are met, counsel for Nelson argues that it would be inequitable to require Nelson to turnover funds in the amount of the allowed Anderson, Christiansen, and Ford claims against the estate. His argument is that even if Nelson turned over funds sufficient to completely satisfy these claims, Anderson, Christiansen, and Ford would likely not be paid in full because the Code would require the Trustee to distribute the turned-over money according to the priority rules of 11 U.S.C. § 726(a); and that, because Anderson, Christiansen, and Ford are general unsecured creditors who will receive pro rata distributions from the Trustee only after all administrative claims and priority unsecured claims are first paid in full, they will inevitably not receive 100% payment on their unsecured claims. *See* [Adv. Doc. No. 42, at ¶¶ 25 & 48]. Thereafter, Anderson, Christiansen, and Ford could seek payment of the remaining amounts from Nelson individually and, in effect, Nelson would have to pay more than what is owed on the Debts.

---

("[a]s the successor in interest, the trustee is bound by all authorized acts of the debtor in possession."); *In re Bettis*, 97 B.R. 344, 346 (Bankr. W.D. Tex. 1989); *In re Consultrix Techs., Inc.*, No. 06-01107-NPO, 2006 Bankr. LEXIS 4999, at *4–5 (Bankr. S.D. Miss. Sept. 29, 2006). Thus, here, the Trustee is bound by the settlements negotiated by the Debtor which gave Anderson, Christiansen, and Ford allowed claims. As importantly, Nelson is bound by the settlement agreements. He had notice of the applications to compromise setting forth the terms of the settlements, and he did not object; therefore, he is bound by these settlements. *See* [Doc. Nos. 171 & 198]; *Cf In the Matter of Garfinkle*, 672 F.2d 1340 (11th Cir. 1982) (discussing waiver and noting that the failure to timely assert a right or object to the relinquishment of a right, such as a defense, waives the ability to object later if there is (1) the existence of a right at the time of the waiver; (2) actual or constructive knowledge of the right; and (3) intent to waive the right ); *In re Laminate Kingdom, LLC*, No. 07-10279-BKC-AJC, 2011 Bankr. LEXIS 4773 (Bankr. S.D. Fla. Dec. 5, 2011) (discussing waiver and declaring that the "equitable principles" discussed in *Garfinkle* "apply in bankruptcy court proceedings").

While counsel for Nelson makes a valid point, this argument ignores the fact that Nelson could have avoided this outcome had he initially complied with the Agreed Divorce Decree. By not timely paying the Debts, Nelson is in contempt of a court order signed by the Harris County District Court—*which is an order that he explicitly agreed to and approved as to substance.* [Finding of Fact No. 3]; *see also In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (citing *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995)) (defining contempt broadly as "disobedience to or disrespect of a court by acting in opposition to its authority."); *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) (noting that the elements of contempt are "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order."); *Cisneros v. Cisneros*, 787 S.W.2d 550, 552 (Tex. App.—El Paso 1990, no writ) (finding that approval of a judgment as to substance waives any future complaint about that judgment); *Johnson v. Rancho Guadalupe, Inc.*, 789 S.W.2d 596, 603 (Tex. App.—Texarkana 1990, no writ) (same); *Contra In re Broussard*, 112 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (finding no waiver of the right to appeal and holding that approving as to form and substance is the same as approving as to form). Further, Nelson was represented by counsel in connection with entering into the Agreed Divorce Decree [Finding of Fact No. 3]; therefore, he cannot contend that he was duped, mislead, or did not understand the document that he was signing.

Under these circumstances, the unclean hands doctrine prevents Nelson from asserting a defense based upon equity. A party asserting a position based upon principles of equity must come to the court with clean hands; stated differently, one who seeks

equity must behave equitably. *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) (citing *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App. 2006)). Here, Nelson himself has acted inequitably by not initially fulfilling his own voluntarily agreed upon obligation to pay under the Agreed Divorce Decree. Since Nelson has "unclean hands," he is not entitled to an equitable defense in this Court.

### E. The Proper Remedy is a Turnover Order

Finally, counsel for Nelson argues that if this Court finds in favor of the Trustee and against Nelson, the proper remedy is a straightforward monetary judgment against Nelson, rather than a turnover order. Yet, counsel cites no case law in support of this proposition. This Court finds that the language and purpose of § 542(b), as well as the case law interpreting it, indicate that the proper remedy is an injunction ordering turnover of the funds.

§ 542 is entitled "Turnover of Property to the Estate" and the language of this section provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, *shall pay* such debt to, or on the order of, the trustee . . . " 11 U.S.C. § 542 (emphasis added). Thus, pursuant to the plain language of the statute, turnover is the appropriate remedy in an action brought under § 542(b). *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are unambiguous . . . 'judicial inquiry is complete.'") (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42 (1989); *Rubin v. United States*, 449 U.S. 424, 430 (1981)); *The Offshore Drilling Co. v. Gulf Copper & Manufacturing Corp.*, 604 F.3d 221, 228 (5th Cir. 2010) ("Where a

provision is unambiguous, we determine the rights of the parties by giving legal effect to the contract as written."). Additionally, the purpose of § 542 lies in equity—§ 542 invokes the equitable powers of the bankruptcy court to gather and manage property of the estate. 5-542 COLLIER ON BANKRUPTCY P 542.01 (16th ed.). Therefore, an equitable remedy is more appropriate than a legal remedy.

Cases interpreting and applying § 542(b) have agreed, ordering turnover of funds as opposed to simple money judgments. *See, e.g., Braniff Airways v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1037–38 (5th Cir. 1987); *In re Cascade Roads, Inc.*, 34 F.3d 756, 766 (9th Cir. 1994); *In re Kakowlewski*, 29 B.R. 572, 573–79 (Bankr. W.D. Mo. 1983). In one such case, the court explicitly rejected the defendant's argument that § 542 should be read to provide only legal relief in the form of a money judgment rather than equitable relief in the form of turnover—the very same argument Nelson makes here. *In re Stangler*, 186 B.R. 460, 464 (Bankr. D. Minn. 1995). The *Stangler* court held that, because turnover actions are equitable proceedings, the "appropriate form of the judgment is in the nature of injunctive relief based on orders for turn over." *Id.*

Finally, § 105(a) provides a separate and additional basis on which the Court may rest its decision to order turnover of funds sufficient to satisfy the Debts and attorneys' fees. § 105 empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This provision encompasses the power to enter injunctions. *See In re EZ Pay Servs., Inc.*, 389 B.R. 751, 756 (Bankr. M.D. Fla. 2007); *In re Casner*, 302 B.R. 695, 704 (Bankr. E.D. Cal. 2003). As the Fifth Circuit has made clear, § 105 is not "a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986). Rather, the

court's equitable powers under § 105 must be exercised "in a manner consistent with the provisions of the Bankruptcy Code." *Id.* Here, an injunction requiring turnover is appropriate in order to give effect to section § 542(b) and enable the Trustee to carry out his duties under the Code to collect and manage property of the estate for eventual distribution to creditors—thereby fulfilling one of the major goals of the bankruptcy system. *In re T-H New Orleans Ltd. P'ship*, 188 B.R. 799, 807 (E.D. La. 1995), *aff'd*, 116 F.3d 790 (5th Cir. 1997) ("The laws and jurisprudence of bankruptcy note often that there are two competing goals of bankruptcy and reorganization. *One is the satisfaction of valid claims against the estate.* The other is to allow the debtor a 'fresh start' in the market place.") (emphasis added).

### IV. CONCLUSION

For all of the reasons set forth herein, this Court will grant the turnover relief sought by the Trustee: Nelson must turnover funds to the Trustee sufficient to satisfy the Debts, reduced by any amounts Nelson has already paid, plus reasonable attorneys' fees and costs. Because there are genuine issues of material fact in dispute as to exactly how much the Debt totals at present, and as to the reasonableness of the amount of attorneys' fees, a trial will be held to determine the exact amount that Nelson will be ordered to turnover. But, once that amount is determined, Nelson will be required to immediately turnover that exact amount in good funds to the Trustee.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

Signed on this 18th day of October, 2012.

*Jeff Bohm*
Jeff Bohm
Chief United States Bankruptcy Judge